Well, I guess the way I was going to begin saying this, I guess I should say that I'm Jesse Kaplan, the attorney for Barbara Sterio, who is the appellant, and I suppose I should reserve five minutes of time. I was going to say that this case, this arrest of a long-term disability case, involves the wrong standard of review, applied to the wrong standard of review, unless you get past the first one of those wrong standards of review. Dr. Robert J. Sterio Let's suppose the standard of review really is abuse of discretion, but under Montour, there was a structural conflict of interest here, which the insurance company had. Then Montour tells us we have to apply a heightened sense of suspicion, if you will, to the decision to deny benefits. And isn't it so that there was a number of things, there were a number of things, that the insurance company should have considered, including the Social Security determination and the other matters? That's what we're interested in. Justice Breyer Yes, I, well, I absolutely agree, and I don't think Montour is the first case to say that you have to apply a heightened standard of suspicion in this structural conflict situation. What it said even more specifically is that the sentence in the district court decision that reads, in light of the conflicting evidence this court cannot say, Highmark abused its discretion in evaluating plaintiff's disability claim, which is the linchpin of the whole decision, that's just not the way you decide cases. It's really a body that brings you the heightened scrutiny, but it's Montour that says, Why don't you just have conflicting evidence? That's it? That's what Montour says, at least reduced to a shambles and a joke, and that's what happened here. Justice Sotomayor What's shambles and a joke? Maybe I'm missing something. Justice Breyer Well, okay, let's go back to the heightened scrutiny. You're supposed to really look at the, you've got an abusive discretion standard, which means that you're supposed to be theoretically deferential to the decision that the insurance company made, Highmark, but because Highmark is under a structural conflict of interest, you're nonetheless supposed to view its decision-making with suspicions, not the right word, of course, but your heightened scrutiny perhaps is, I forget exactly what the right formulation is, but you get the idea, and you just can't possibly, since a body, and now directly on point since Montour, just say, Okay, I'm the district court, there's conflicting evidence, tie goes to the insurance company. You're not performing your duty of looking at the evidence. You're not really looking at the evidence any more than to say, Gee, it looks like it's in conflict. No case is ever going to look to Justice Kagan That's not what the case says. I mean, Montour gives some teeth and meaning to the whole thing, which they say that the weight you And while they don't really use the same kind of skepticism language that was used in a body, they're saying it's functionally equivalent to assigning more or less weight depending on the nature of the conflict. So you weigh it, you line up all the factors, and the court needs to say, Well, I looked at that, and, you know, the conflict is so minimal that I'm not giving it great weight, or the conflict is significant here, and therefore I'm going to, in tipping it in my balance of discretion. So, I mean, I think that Montour gives us, or gives the district courts, some standards. The question is, with this new, I guess I'll call it a gloss on the standards, did this court abuse its discretion? My answer, of course, is yes, and my response What should we do about it if we were to agree with you? Well, I think you should reverse and I've given you some Reverse and what? Enter judgment for your client? I would like you to, and I've given you some reasons to That's what happened in Montour, as I understand And I think the more interesting thing about this case is whether you do that and the reasons you give for it, because the reasons why Highmark actually decided against my client are not very good reasons, and you have a chance to say something about that. It's not absolutely new, maybe, but I've said some maybe new things by talking about how It doesn't exactly level the playing field when you're evaluating the opinions of different physicians If, to continue in that direction for a minute, my basic point that I'm making is If you have, first of all, to even go back a step, there at least should be some suspicion about using non-examining physicians in a case that's really about pain and depression, which isn't very easy to figure out from raw medical records. But okay, moving forward from that Well, didn't the district court review each of those independent physicians? They were non-treating physicians, but they rendered an opinion. What more does the court have to do? Well, it certainly has to review them. The thing that I want to say is that there isn't a lot of law in this ERISA long-term disability field about how a court should evaluate the different classes of doctors, whether they're treating doctors, examining doctors, or, as here, non-examining doctors. But one thing that surely makes sense, even if you're not going to adopt the treating physician rule, which obviously you can't because of Black & Decker v. NORD, is you can We already tried that once. Yes. The Supreme Court didn't agree on that point. Right, but it didn't say that you're not allowed to ever look at Social Security law again in any way whatsoever in these cases. And, of course, it's done all the time, and I think it makes good sense, and I could talk on and on about why I think it does. But I just want to suggest that you can import some common sense that's well worked up for years and years in Social Security cases, which is this. If you've got non-examining doctors and they don't have any source of medical knowledge, other than the treating record, information from treating doctors, and you've got treating doctors that support the person in my client's position, just basically even some of those things I just said may not even be necessary. If you've got a non-examining doctor and you've got some doctor up this three-doctor hierarchy who disagrees with him and all the non-examining doctor is saying, in effect, is I disagree, that shouldn't be enough. He doesn't know anything new because he doesn't have any different information. Unless he does. But they don't hear. Kennedy. You're not suggesting that a pure paper review is always going to be error? Feigin. No, I'm not. But what I am saying — Kennedy. What are you suggesting, then? Feigin. What I'm saying is that a non-examining doctor has to be able — first place, he just has to, as I once heard somebody say, show your work like a kid in arithmetic. But he has to say these are the reasons. I either — I am seeing something — Kagan. Well, I think that would mentor, in effect, add some additional factors the Court ought to consider, such as the quality of medical evidence. And there is a difference between a conclusory medical report by a non-examining physician and a medical report by an examining physician who lays out details, isn't it? So doesn't mentor, say, evaluate that? Well, and that way of putting it is kind of what I'm saying. I was going to expand on what that says just a little bit. Don't — if you're an examining — I mean, a non-examining physician, don't give a conclusory opinion. Point to the fact that you somehow know some facts that the examiners or the treaters don't know. Either point to that fact or point to a fact that they do know and explain why they're wrong about it, or point to medical authority that explains why you're right and you're wrong. But you can't just say, I looked at it and my opinion is different. The plaintiff appellant here was granted Social Security disability. Was that information provided to these, to the appellee, to the treating physicians? Not the treating physicians, the paper review physicians. Is there anything in the record that reflects they knew that? That's, of course, Highmark's fault if they didn't, and it depends on the exact timing of when these non-examining doctors saw this. The Social Security grant — they should have seen it, I guess. Is there anything in the record that tells us that they knew about it? Certainly nothing in so many words, but the award is in the claim file, and the award happened early on, and this happens to be a situation where this LTD claim workup was incredibly belated. So they could have known, but it's Highmark's — I can only give evidence to Highmark. Highmark's the one that feeds the information to these non-examining doctors. So the Montour case adds and describes various factors which should be considered and asks that the Court weigh these various factors. What do you think is the strongest factor in favor of reversal here? Well, let's not lose sight of the fact that I think we're talking about the whole wrong standard of reversal. But I'll try to answer your question. If we really were in an abusive discretion situation, which we really aren't, I kind of think we have to go off in the general direction that we've been talking about, because this case looks at first blush as if the insurance company did this great job and just buried my client because they had her — got opinions from a whole bunch of doctors, but the opinions are pretty vacant of anything, and they don't combine all the different problems that she has. They broke up her impairments and gave them out to specialists who were all non-examining specialists. So if you just barely look at the thing, you go, wow, look at all these doctors who spoke against her. I guess Highmark's right. So this is a good time to say, look, doctors that are non-examining doctors, they have to give some reason for what they're saying, because they don't know anything. They're just looking at information on a page, and they can't just say, I disagree. And it's a real fancy thing that you see in disability cases all the time of any sort, for a doctor to say the objective evidence doesn't support disability. That is a horrible thing to say in a disability case, because that means that a doctor looked at an X-ray, an MRI, an ultrasound, a blood pressure reading, anything, and he knows exactly what it means on the ground. And that's not the case for much of anything in the world of disability. Do you want to reserve the remaining minute and a half? That's fine. Thank you. Good morning, Your Honors. My name is Nancy Potter, representing Highmark Life Insurance Company, now known as HM Life. With respect to the Montour case, well, first of all, the district court had all of the medical records for this patient, had all of the evaluated reports, looked at everything. I would note in this case that the appellant is primarily relying upon a report from an internal medicine doctor, who is basically her primary care physician, who said she is totally and permanently disabled from any type of gainful employment, and under the Saffel case it was held that, you know, that's pretty much saying she's non-conscious. By contrast, we had orthopedic records, we had neurological records, because she was treated by orthopedists, neurologists, psychologists and psychiatrists, and all of those were in there, but none of those physicians gave an opinion that she was totally and permanently disabled from doing anything. Perhaps one reason that I will concede that there is not any discussion in the district court of comparing this with the social security disability finding, in fact, I think the district court thought we spent too much time on it in our briefs and our argument, was the social security disability finding was in 2001, again based upon this internal medicine doctor finding. She did not apply for her disability benefits with Highmark until mid-2003. By that time, there were many, many more medical records to be reviewed. We had a, basically we had a new situation. And hence, I think that that may be one reason, other than the Montour case was not there to provide guidance to the district court, that it should make a comment on this as to why the social security disability finding was not discussed. They had several other points in Montour that have been added, I guess, if you want to call them criteria that one would look at. So my question is, if we, if because Montour does add some either additional criteria or gloss as to how you're supposed to look at this, should we remand, if we thought that was the case, should we remand to the district court to make that determination? Or should we, as Mr. Kaplan says, enter judgment with his client? Well, I would note initially, Your Honors, that it would be rather impossible in this case to enter a judgment here and now, because there was never any finding below as to what disability benefits she would be entitled to. If she was, in fact, found to be disabled under either standard, that was actually an issue of significant dispute as to what her benefit would be, and the district court never reached it, of course, because the court found that she was not disabled. But we would simply have to go back and deal with that issue as an initial matter. We didn't even discuss it in our briefs here, because it was not part of the district court's holding. In addition, if you look at the issues that the Montour court found for reversing what Hartford did, first of all, it found that there was a very selective evaluation of the medical evidence. For example, they had some video surveillance of this claimant, and found that, well, gee, he can do these things. We've seen him bend over. We've seen him drive. So, therefore, he must not be disabled without recognizing or acknowledging that when it showed that he could bend over and drive and these things, that he was doing it very slowly, very carefully, that it didn't look like he could do it in a comfortable manner. In addition, Hartford relied upon a primary care physician rather than the orthopedist and that, and the primary care physician hadn't seen this patient as often as the other doctors whose opinions were ignored. And a third factor was that Hartford sort of put a thumb on the scale when it sent the records off to the medical evaluators and gave them its own read of the records as part of its transmission of the records. Highmark's transmission was absolutely neutral. So I would suggest that there's a lot of case-by-case evaluation here, and that when you look at the case-by-case factors and the difference between what Hartford did there and what Highmark did with this case, that the mentors simply wouldn't apply. Did your client add a new reason in its final decision? And did the appellant here ever have a chance to deal with that? Highmark did not add a new reason, but what happened was initially when Ms. Stereo applied for disability, she didn't mention that she had been in the psychiatric hospital twice. She didn't even supply the name of it. So there was some reference, of course, to some mental problems because her Kaiser records showed that. But when so Highmark didn't ask for the records because it didn't know this place existed. In addition, she did not give a release which would allow release of mental health records. So Highmark initially evaluated based solely upon the Kaiser records, which had only limited references to any psychiatric problems. So there were no different reasons, but there was evaluation of the additional information which Mr. Kaplan had provided. The finding was the same. This was not like a botty where first they said, oh, well, the issue was whether there was a waiver of the time to submit something, and then the second time said, oh, well, yeah, there was a waiver. Oh, and by the way, he also wasn't disabled. That was not what happened here. It does seem that the final decision on appeal did add a new reason for disallowing the claim. If, under Abatey, we were to so conclude, how would that be dealt with if it were remanded? Is that the new reason is just not considered? How does it work? Well, see, I don't think it's a new reason. I think it's another aspect of whether she was disabled, which was looked at, which was whether she was disabled from a psychiatric standpoint. I don't think it's a new reason. It was just, okay, we have additional evidence we're looking at. There has never been any proposal, suggestion, offer that there is more evidence out there that the district court could look at that would affect this. If there was some issue that there was some evidence that hadn't been seen on either the first go-round or the second go-round to show that, and maybe if on a third go-round there was some new evidence that might change the evaluation, then that would be fine. But there's never been a suggestion that Highmark did not have all of the medical records by the time of the second go-round. Well, on that point, though, if there's some reference made, for example, to the bone density, and if somehow Highmark thought it was, do we have any evidence that it specifically requested those records from her? My under ---- well, what happened was ---- And that's what's missing on some of it. I mean, I realize there might be interesting medical records, but if she hasn't even given a chance to supply what is supposedly easy to get, it leaves her in a bind. Well, the first time around, what happened is we didn't rely upon her to supply them. The first time around, we got the medical release, went to Kaiser, said send ---- which she identified as her treater, and Kaiser, of course, is a very comprehensive system, and said, send us everything you got, and got a great deal of information. The second time around, Mr. Kaplan took it upon himself to get the information himself, including some updated reports, of course, and then he went to the psychiatric hospital and got those records. That was supplied, but I don't think there's any information that either we didn't get all the Kaiser records or that there's some out-of-Kaiser, out-of-psychiatric-hospital records that exist that nobody got. Well, but the final decision does note that she was hospitalized on two different occasions, which was during any occupation phase, and she's therefore not entitled to long-term LTD benefits, as she was not deemed disabled at the onset of the illness at 24 months. Now, that was never provided to her before that, was it, that excuse, that reason for denying coverage? Actually, there was a reference in the initial psychiatric report from December of 2003 that during the time she was actually hospitalized, she would be disabled, but she would not be disabled afterward. Well, assuming, let me just ask you to assume that the panel might conclude that that was a new reason not adequately disclosed prior. What's the significance or consequence of that in light of OBD? I don't think there is any consequence here, because what we have is that all of the records have been supplied. There's nothing that has ever been identified that might, that he could have come back with and said, but wait, you never told me you were looking at it on this ground, so I couldn't give you this. We have everything, as far as we know, apparently, as far as Ms. Stereo and her attorney know, we have everything. We have everything there is to know about her medical and psychiatric condition. It was all there, and there was never even a, I mean, I think that it was dealt with in December and just dealt with more comprehensively once we had the hospital records, which showed that when she was released, she was in great shape. But there just isn't anything new to look at. There's nothing new to present that might have changed this. Did the insurance company consider the determination by Social Security that Ms. Stereo was permanently disabled? The company did have that information, and it looked at it. The company had that information. And I don't recall off the top of my head any discussion, and I don't know if it was part of the materials that was sent to all of the reviewing doctors. Is there anything in the reviewing doctor's reports that suggests they knew about the Social Security determination? Not that I recall. So that is very similar, is it not, to Montauk, where the Court said one of the factors is that there was, in Montauk, as I take it here, a pure paper review. And then the Court goes on to say specifically neither of Hartford's professional experts mentioned the SSA contrary conclusion, not even to discount or disagree with it, which indicates they may not even have been aware of it. Is that kind of where we are here? That may be where we're at, but again, I would point out that the Social Security disability finding was two years before, and we had another two years' worth of medical records which they looked at. So I would suggest that perhaps that factor would not be so significant here because of the substantial amount of time which had passed and the change in medical evaluations over that period. Isn't that what the decision-makers should have discussed and made the determination? I understand your argument, but we don't see anything like that. Under Montour, perhaps, yes. But again, it's just one of numerous factors that led to the finding in that case. Obviously, Montour was new on the scene, so you didn't have the benefit of that, neither did the district court. Correct. Thank you. I guess under either standard of review, including the appropriate one that we haven't really been talking about, you get to, if you choose, reach the question of how to evaluate the medical evidence, which is what we've talked about quite a bit. Let me just say one thing about what was just said, which is the premise that Highmark had a lot more medical information than Social Security because it made its decision a couple of years or whatever later. The problem with that is the more medical information there is, the more disabled she looks, by any reasonable standard. There's nothing there, and nobody's pointed to anything that says, well, the more we found out about this case, the better she looked, the longer time goes on, the more her leg withers up and atrophies and gets shorter than the other one, and so on and so forth. If medical information would justify what Highmark did, Social Security should be credited for recognizing she's disabled on less evidence, but it's just more of the same evidence. So I think that's the basic point. I did want to say that, you know, really there's two doctors, two treating physicians that supported Barbara Sterio's claim that they had a lot of medical information. There's a... We do have the complete record that you provided, and we have in mind the various doctors' opinions. So thank you for your argument, and thank you for the argument this morning. Sterio v. Highmark is submitted.
judges: Zilly, Thompson, McKeown